IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| THE ESTATE OF M.R., | Lead Case No. 3:23-cv-00705-SB |
| Plaintiff, | (Consolidated Case No. 3:23-cv-00702-SB) |
| v. | **OPINION AND ORDER** |
| OREGON DEPARTMENT OF HUMAN SERVICES *et al.*, | |
| Defendants. | |

OREGON DEPARTMENT OF HUMAN SERVICES *et al.*,

        Third-Party Plaintiffs,

v.

MARYLYNNE REYNOLDS,

        Defendant.

MARYLYNNE REYNOLDS,

        Plaintiff,

v.

ANGELA KNEELAND *et al.*,

        Defendants.

_____

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Estate of M.R. (the "Estate") filed a motion to compel Defendants to produce documents in response to its first request for production. (ECF No. 26 in No. 3:23-cv-00702-SB and ECF No. 33 in No. 3:23-cv-00705.)[1] The Court heard oral argument on March 22, 2024. For the reasons discussed below, the Court grants in part and denies in part the Estate's motion to compel.

## BACKGROUND

The Estate alleges that M.R. died in state custody in March 2021. (Compl. ¶ 2, ECF No. 1-1.) M.R. was born with a congenital heart defect, which rendered him medically fragile and at risk of sudden cardiac events. (*Id.* ¶ 26.) Defendant Department of Human Services ("DHS") removed M.R. from his mother in 2014 and placed him in foster care and ultimately in a residential facility. (*Id.* ¶¶ 33-34.) M.R. struggled physically and emotionally and attempted suicide at the residential facility in 2015. (*Id.* ¶¶ 35-36.) M.R.'s mother regained custody of M.R. in 2015, but M.R. remained fearful of DHS. (*Id.* ¶ 36.)

In September 2020, M.R. was evaluated for a heart transplant, and his placement on a wait list was deferred to address his medical needs. (*Id.* ¶ 37.) In December 2020, DHS sought custody of M.R. (*Id.* ¶ 39.) Despite Defendants' knowledge of M.R.'s complex medical and mental health needs, Defendants placed M.R. on an emergency basis with "C.G.," and knew or should have known that C.G. had significant mental health issues, was in a dire financial situation and on the verge of filing for personal bankruptcy, had no medical training, had no

---

[1] Except where otherwise noted, the Court cites to the parties' filings in Lead Case No. 3:23-cv-00705-SB.

PAGE 1 – OPINION AND ORDER

children or parenting experience, and lived in a small efficiency apartment without access to a vehicle. (*Id.* ¶¶ 49-51.)

DHS involuntarily removed M.R. from his mother on March 11, 2021, and placed him in C.G.'s home. (*Id.* ¶ 58.) During a supervised in-person visit on March 17, 2021, DHS learned that C.G. was not properly administering M.R.'s medications. (*Id.* ¶¶ 65-66.) DHS and C.G. caused M.R. to miss a cardiac rehabilitation appointment that same day. (*Id.* ¶ 68.) The next day, M.R. collapsed outside C.G.'s home and died. (*Id.* ¶¶ 69, 72.)

The Estate filed this case, alleging that Defendants were deliberately indifferent to M.R.'s protected interests in violation of 42 U.S.C. § 1983 in several ways, including by directing the removal of M.R. from his mother without a plan to protect his medical and emotional health; approving the emergency certification of C.G. and directing the placement of M.R. in her care; failing to ensure that C.G. could meet M.R.'s complex medical and mental health needs; failing to ensure that M.R. was given his medications as prescribed; and failing to preserve M.R.'s personal property, blood sample, and other evidence relating to cause of death. (*Id.* ¶¶ 78-113.) The Estate also alleges wrongful death and intentional infliction of emotional distress claims against DHS under state law. (*Id.* ¶¶ 114-133.) The Estate alleges that Defendants' conduct was the proximate cause of M.R.'s emotional distress, personal injury, and death, and seeks $7.5 million in non-economic damages and $15 million in punitive damages. (*Id.* at 21-22.)

M.R.'s mother filed a similar action against DHS, an individual defendant, and several Doe defendants (Case No. 3:23-cv-00702-SB), which the Court consolidated with the Estate's related case.

///

///

PAGE 2 – OPINION AND ORDER

## DISCUSSION

The Estate moved the Court to compel Defendants to produce documents responsive to the Estate's Request for Production ("RFP") Nos. 5-6, 56, 63-64, 66, and 67-68. (*See generally* Pl.'s Mot. Compel ("Pl.'s Mot."), ECF No. 33.) At oral argument, Defendants reported that they have agreed to produce all documents responsive to RFP No. 56, and that there are no documents responsive to RFP No. 66 in their possession, custody, or control. Further, the parties agreed that the Estate will file a new motion to compel documents responsive to RFP Nos. 67-68, if necessary, upon review of and conferral regarding Defendants' anticipated privilege log.[2] Therefore, the Court addresses herein only the Estate's motion to compel documents responsive to RFP Nos. 5-6 and 63-64.

## I.      REQUEST FOR PRODUCTION NOS. 5-6

The Estate requested that Defendants produce "[a]ll Tort Claim Notices pertaining to alleged abuse, neglect and/or death of foster children in the care and custody of District 1 from 2013 through present" (RFP No. 5) and "[i]ndicia of civil lawsuits against District 1 alleging child abuse, neglect and/or wrongful death of foster children from 2013 to the present" (RFP No. 6). With respect to the latter request, the Estate agreed that, for Defendants' convenience, Defendants could produce only the case names and numbers of any relevant civil lawsuits. (*See* Decl. Mary Skjelset, Ex. 6 at 1, ECF No. 34-6.)

The Estate argues that notice of prior allegations of tortious conduct relating to the abuse, neglect, and death of foster children is relevant to Defendants' awareness of the risk of harm that occurred here, a pattern of errors, and the need to preserve documents. (Pl.'s Mot. at 3-4.) The

---

[2] At oral argument, the Court resolved an additional discovery dispute, raised through the Court's informal discovery dispute resolution procedure, regarding subpoenaed documents produced by non-party Columbia County Sheriff's Office.

Estate notes that to address Defendants' proportionality concerns, it has limited the request geographically to District 1 only, and temporally to the time period M.R. was previously in care (2014-2015) through the removal that preceded his death in care in 2021. (*Id.* at 3.)

Defendants objected to the request on relevance, proportionality, and confidentiality grounds. (*See* State Defs.' Resp. Pl.'s First Req. Prod. ("RFP Resp.") at 5-6, ECF No. 34-2.) Specifically, Defendants argue that the request would require them to produce highly sensitive information of non-parties, and that prior allegations of abuse or neglect are not relevant nor proportional to the needs of the case because the Estate has not raised allegations of abuse or neglect here. (Defs.' Resp. Opp. Pl.'s Mot. Compel ("Defs.' Resp.") at 3-6, ECF No. 35.) Defendants also argue that "indicia" of lawsuits is impermissibly vague and that information about civil lawsuits is publicly available. (*Id.* at 6.)

At oral argument, the Estate responded that the requested documents are relevant to Defendants' alleged pattern of certifying individuals who are unfit to provide care for children, particularly for children with complex needs, and that such a pattern is relevant to the Estate's claims of deliberate indifference. The Estate further argued that evidence of prior tort claim notices and litigation are relevant to Defendants' knowledge of the need to preserve evidence, as the Estate alleges that Defendants have lost or destroyed material evidence relating to M.R.'s death.

The Court finds that the requested documents are relevant and proportional to the needs of this case. Specifically, as other courts have recognized, persistent violations are relevant to the subjective element of the deliberate indifference standard. *See, e.g.*, *A.G. v. Or. Dep't Hum. Servs.*, No. 3:13-cv-01051-AC, 2015 WL 5178707, at *5 (D. Or. Sept. 3, 2015) ("In this case the Plaintiffs alleged DHS and its officers exhibited a pattern of disregard of their statutory and

PAGE 4 – OPINION AND ORDER

regulatory duties, and claimed ignorance of abuse in response to lawsuits filed by the intended beneficiaries of those legally imposed duties. The court agrees with the reasoning in *Doe* that repeatedly failing to comply with those legal duties gives rise to an inference of subjective awareness that satisfies the deliberate difference standard. This is especially true in the context of DHS's mission, which includes guarding the safety and well-being of the children committed to its care and custody. The purpose of the foster parent certification process is to ensure to the greatest extent possible that foster children are placed with foster parents who are emotionally and fiscally stable, properly trained, temperamentally suited, and otherwise capable of caring for their young wards.") (citing *Doe v. N.Y. City Dep't of Soc. Servs.*, 649 F.2d 134 (2d Cir. 1981)); *see also A.F. v. Evans*, Civ. No. 2:18-cv-01404-SU, 2021 WL 4255043, at *10 (D. Or. Sept. 17, 2021) ("A.F. and E.F. may support their claims of deliberate indifference by showing a persistent pattern of violation of regulatory duties by the individual Defendants where those duties are intended to shield children like A.F. and E.F. from harm. Under *Tamas*, the persistent pattern of violations goes to the subjective element of deliberate indifference and what inferences a reasonable official would have drawn in those circumstances." (citing *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833 (9th Cir. 2010))). Here, evidence of persistent violations in District 1 relating to, among other things, certifying caregivers, is relevant to the Estate's claims of deliberate indifference relating to Defendants' certification of C.G.[3] Further, the document requests are not overbroad because they are limited to the single district at issue, and to a reasonable time period dating back to Defendants' initial involvement with M.R.

---

[3] In light of the Court's finding that the document requests are relevant to the Estate's claims of deliberate indifference, the Court does not reach the question of whether prior tort claim notices and litigation are relevant to Defendants' knowledge of their duty to preserve evidence.

Defendants also object to the requests on proportionality grounds, but present no evidence or information about the specific burden that would result from responding to RFP Nos. 5 and 6. On their face, the requests do not appear to present an undue burden. The Court finds that the requested documents are proportional to the needs of this case, considering the importance of the issues at stake (important), the amount in controversy (high), the parties' relative access to relevant information (the Estate has less relative access), the parties' resources (the Estate has fewer resources), the importance of the discovery in resolving the issues (important), and the burden of the discovery relative to its benefit (not undue). *See* FED. R. CIV. P. 26(b).

The Court further finds that Defendants' concerns about producing materials containing sensitive third-party information are adequately addressed by the terms of the protective orders in place in both cases (ECF No. 24 in No. 3:23-cv-00702-SB and ECF No. 31 in No. 3:23-cv-00705-SB). *See, e.g.*, *Welle v. Provident Life & Accident Ins. Co.*, No. 3:12-cv-3016 EMC (KAW), 2013 WL 5663221, at *2 (N.D. Cal. Oct. 17, 2013) ("The court also overrules [the defendant's] objection that the information Plaintiff seeks is confidential or proprietary. The parties have stipulated to a confidentiality agreement and protective order in this case. [The defendant] has offered no persuasive reason why the information at issue here, if in fact confidential or proprietary, would not be adequately protected under that agreement.") (simplified).

Accordingly, the Court orders Defendants to produce all Tort Claim Notices pertaining to alleged abuse, neglect, and/or death of foster children in the care and custody of District 1 from 2013 through present (RFP No. 5) and the names and case numbers of all civil lawsuits against District 1 alleging child abuse, neglect, and/or wrongful death of foster children from 2013 to the

present (RFP No. 6).[4] *See* Minutes of Proceedings, *Levi v. Chapman*, No. 6:22-cv-01813-MK, (D. Or. July 5, 2023), ECF No. 56 (ordering the defendant "to produce all Tort Claim Notices and complaints of foster care abuse or neglect issued to the Lane County Department of Health and Human Services").

## II. REQUEST FOR PRODUCTION NOS. 63-64

The Estate requested that Defendants produce "[a]ny DOJ Request for Defense ("RFD") forms or agreements provided to and/or signed by the defendants" (RFP No. 63) and "[a]ll correspondence with the individual defendants relating to their respective RFD forms or agreements" (RFP No. 64). (Pl.'s Mot. at 5.) The Estate argues that judges in this district have consistently ordered the production of RFD forms and agreements in similar cases, because the terms of such agreements between DHS employees and the Oregon Department of Justice ("DOJ") reflect that an employee's admission of a policy violation in the course of litigation could result in an adverse employment action, that DOJ may refer any admissions of criminal conduct to law enforcement for potential criminal charges, and that there is a risk that DOJ will withdraw from representation. (*Id.* at 5-6.) The Estate argues that these terms of representation create a chilling effect, and have created a chilling effect in other cases, and the agreements are therefore relevant to DHS witnesses' willingness to be truthful and cooperative in the course of litigation. (*Id.* at 6.)

///

///

---

[4] The Estate's agreement that Defendants may produce case names and numbers of any civil lawsuits resolves Defendants' objection that "indicia of civil lawsuits" is impermissibly vague, and Defendants' response will allow the Estate to retrieve publicly-available complaints and dockets.

PAGE 7 – OPINION AND ORDER

Defendants objected to the requests on the grounds that the responsive documents are not relevant nor proportional to the needs of the case, and are protected by the attorney-client privilege and attorney work product doctrine. (RFP Resp. at 10; Defs.' Resp. at 6-8.)

At oral argument, the Estate argued that the RFD forms, agreements, and related correspondence are not protected by the attorney-client privilege and are not attorney work product, because (i) the forms clearly state that DOJ does not represent the employee until the employee returns the form and participates in an interview, (ii) the materials are not marked confidential or privileged, and (iii) Defendants did not include the materials in their privilege log. Defendants responded at oral argument that the attorney-client privilege protects communications between attorneys and prospective clients, the Estate is presenting facts not before the Court (including that an interview must occur prior to representation and that the RFD forms are not marked confidential or privileged), and Defendants' privilege log remains in production and Defendants will log all documents withheld on privilege or work product grounds.

Defense counsel also proffered at oral argument that the blank RFD form that DOJ sends to individual defendants contains legal advice. The Court requested that defense counsel submit a copy of the blank RFD *in camera* for the Court's review, defense counsel did so on March 22, 2024, and the Court has reviewed the sample RFD. The sample RFD is a form letter from DOJ's Chief Trial Counsel to prospective clients, providing the lawyer's legal advice and mental impressions with respect to the employee's rights and responsibilities in securing DOJ's representation after being named in a pending lawsuit. If the employee elects to request that DOJ defend her in the pending litigation, the return form includes a series of acknowledgments and representations, including with respect to factual allegations in the lawsuit.

PAGE 8 – OPINION AND ORDER

In the Ninth Circuit, communications are protected by the attorney-client privilege when the following eight elements are satisfied: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived."[5] *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)). "[T]he attorney-client privilege is strictly construed." *Id.* (citing *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)). The party asserting the privilege bears the burden to prove each element of the eight-part test. *See id.* at 607-08 (citing *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000)).

The attorney work product doctrine is codified in Federal Rule of Civil Procedure 26: "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless the materials are otherwise discoverable and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A); *see also Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) (recognizing that an attorney's work product as reflected "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" must be protected to allow "a lawyer [to] work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel"). "If the court orders

---

[5] "Pursuant to Federal Rule of Evidence 501, federal common law generally governs claims of privilege. 'Where there are federal question claims and pendent state law claims present, the federal law of privilege applies.'" *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 835 F.3d 1155, 1158 (9th Cir. 2016) (quoting *Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005)).

discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B).

Having reviewed the blank RFD form letter, the Court disagrees with the Estate that the form is not protected because DOJ sent the form to a prospective client. The Ninth Circuit has clearly instructed that "[t]here is nothing anomalous about applying" the attorney-client privilege to "preliminary consultations." *Barton v. U.S. Dist. Ct.*, 410 F.3d 1104, 1111-12 (9th Cir. 2005) (construing the attorney-client privilege under California law, and noting that "[p]rospective clients' communications with a view to obtaining legal services are plainly covered by the attorney-client privilege under California law, regardless of whether they have retained the lawyer, and regardless of whether they ever retain the lawyer"); *see also id.* at 1111 ("The rationale for this rule is compelling, because no person could ever safely consult an attorney for the first time with a view to his employment if the privilege depended on the chance of whether the attorney after hearing his statement of the facts decided to accept the employment or decline it.") (simplified); *Schmidt v. City of Pasadena*, No. 2:21-cv-08769-JAK-JC, 2024 WL 650424, at *9 n.17 (C.D. Cal. Jan. 22, 2024) ("Although *Barton* involved the application of California's attorney-client privilege law, and federal common law—not California state law—governs privilege-based discovery disputes where, as here, the case involves federal claims, even if allied with pendent state-law claims, federal courts have likewise held that communications from prospective clients with the aim of obtaining legal services are generally covered by the attorney-client privilege, even if the attorney is not ultimately retained.") (citations omitted); *see also Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1017-19 (N.D. Cal. 2022) ("Of course, communications may be privileged even if they occur before the attorney is formally

PAGE 10 – OPINION AND ORDER

retained. For example, communications from prospective clients with the aim of obtaining legal services are generally covered by the attorney-client privilege, even if the attorney is not ultimately retained.") (citations omitted); *Bolding v. Banner Bank*, No. C17-0601RSL, 2021 WL 1530998, at *2 (W.D. Wash. Apr. 19, 2021) ("Communications from prospective clients with the aim of obtaining legal services are generally covered by the attorney-client privilege, even if the attorney is not ultimately retained."). Thus, the fact that the communications at issue occurred between a DOJ attorney and prospective clients does not destroy the privilege or work product protection.

     Further, a label or lack of a label is not dispositive with respect to whether a communication is protected by the attorney-client privilege or work product rule. *Cf. In re Chase Bank USA, N.A. Check Loan Cont. Litig.*, No. 3:09-MD-2032 MMC JSC, 2011 WL 3268091, at *4 (N.D. Cal. July 28, 2011) ("Merely labeling a communication as an 'attorney-client privileged draft' . . . or adding an attorney as a recipient are insufficient to confer privilege when the communication is not otherwise for the purpose of facilitating legal advice or services."); *Marceau v. I.B.E.W.*, 246 F.R.D. 610, 613 (D. Ariz. 2007) ("The fact that . . . the Report is marked as an attorney-client privileged document are not dispositive of the issue. Rather what controls is the purpose of the activity."). Thus, the fact that the communications at issue were not stamped or labeled as privileged or work product is not dispositive.

     The Court finds that the RFD forms, agreements, and related correspondence between DOJ and the individual defendants are relevant to the issue of the potential consequences to the individual defendants if they acknowledge any wrongdoing in the course of this litigation. The materials are also proportional to the needs of the case, as Defendants acknowledged at oral argument that there is only a small universe of responsive documents (and incorporating the

proportionality calculus above). Nevertheless, the Court finds that the requested materials are protected by the attorney-client privilege and work product rule, because they reflect communications between a professional legal adviser in her capacity as such and prospective or current clients, and the purpose of the communications was requesting and providing legal advice and sharing counsel's mental impressions in anticipation of litigation. The Court also finds that the Estate has not demonstrated a substantial need for the documents, especially where counsel for the Estate is already familiar with prior versions of the RFD form and the consequences to represented agency employees who admit to wrongdoing in the course of litigation.

However, it is unclear on the record before the Court if the communications at issue were made in confidence, or if the applicable protections were waived by disclosure to others. Therefore, although the Court denies the Estate's motion to compel further production of documents at this time, the Estate may renew its motion after Defendants include the responsive materials on their privilege log if it appears from the log that the responsive documents are not protected by the attorney-client privilege or work product rule.

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART the Estate's motion to compel (ECF No. 26 in No. 3:23-cv-00702-SB and ECF No. 33 in No. 3:23-cv-00705). The parties shall confer regarding a feasible deadline for Defendants to produce the documents and privilege log compelled herein in light of Defendants' other pending document productions.

DATED this 9th day of April, 2024.

*Stacie F. Beckerman*
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 12 – OPINION AND ORDER